838.003-A115

1  ANTHONY A. FRIEDMAN, SBN 201955
2  MOLDO DAVIDSON FRAIOLI SEROR & SESTANOVICH LLP
   2029 CENTURY PARK EAST, 21ST FLOOR
3  LOS ANGELES, CALIFORNIA 90067
   Tel: 310\ 551-3100 ● Fax: 310\ 551-0238
4  Email: afriedman@mdfslaw.com

5  Attorneys for Appellee,
   Carolyn A. Dye, Chapter 7 Trustee
6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10               LOS ANGELES DIVISION

11

| | |
|---|---|
| **In re:**<br><br>**DAWN JEAN KYLE**<br><br>**fka DAWN JEAN MARTIN,**<br><br>Debtor. | **CASE NO.  2:07-cv-08087 FMC**<br><br>*Appeal Arising From United States Bankruptcy Court, Central District of California, Los Angeles Division Bankruptcy Case No. 2:01-bk-42196 VZ* |
| **DAWN JEAN KYLE fka DAWN JEAN MARTIN,**<br><br>Appellant,<br><br>v.<br><br>**CAROLYN A. DYE, CHAPTER 7 TRUSTEE,**<br><br>Appellee. | **APPELLEE'S OPENING BRIEF** |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................2

II.     ISSUE PRESENTED ...............................................................................2

III.    STANDARD OF REVIEW ......................................................................3

IV.     STATEMENT OF FACTS .......................................................................3

V.      SUMMARY OF ARGUMENT ..............................................................11

VI.     ARGUMENT ...........................................................................................11

      1.    Surcharge Of Debtor's Homestead Exemption Is Appropriate Where Debtor's Failure To Cooperate In The Administration Of Debtor's Estate Requires The Trustee To Incur Unnecesary Fees And Expenses. ....................................................11

VII.    CONCLUSION .......................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Earth Island Inst. v. U.S. Forest Serv.,*
  442 F.3d 1147 (9th Cir. 2006)........................................................................3

*In re Arnold,*
  252 B.R. 778 (9th Cir. B.A.P. 2000)............................................................12, 15

*In re Leisure Corp.,*
  234 B.R. 916 (9th Cir. BAP 1999)..................................................................3

*In re Onubah,*
  375 B.R. 549 (9th Cir. BAP 2007)...............................................................11, 15

*Kelley v. Locke (In re Kelley),*
  300 B.R. 11 (9th Cir. BAP 2003).....................................................................3

*Latman v. Burdette,*
  366 F.3d 774 (9th Cir. 2004)..................................................................3, 11, 15


## Statutes

11 U.S.C. §341(a) .................................................................................................4
11 U.S.C. §§521(3) & (4) ..................................................................................8, 11
11 U.S.C. §522(g).............................................................................................8, 16
California Code of Civil Procedure § 704.730(a)(3)(A) ....................................4
Fed. R. App. P 32(a)(1-7) .................................................................................21
Fed.R. App.R. 32(a)(7)(c)..................................................................................22

1   Appellee herein Carolyn A. Dye, Chapter 7 Trustee (the "Trustee"), the duly

2   appointed and acting Chapter 7 Trustee of the bankruptcy estate of Dawn Jean Kyle

3   formerly known as Dawn Jean Martin (the "Debtor"), hereby submits this Appellee's

4   Opening Brief.

5   **I.      INTRODUCTION**

6          The Debtor has not articulated any basis for reversal of the *Order Granting, In*

7   *Part, Carolyn A. Dye, Chapter 7 Trustee's Motion For Order Authorizing Surcharge*

8   *Of Debtor's Homestead Exemption Filed At Suggestion Of Bankruptcy Appellate*

9   *Panel.* The simple facts are that the Debtor consistently interfered with the Appellee's

10  administration of the Debtor's bankruptcy estate thereby justifying, in accordance

11  with applicable law, a surcharge of her homestead exemption.

12         As stated in the Appellee's underlying motion at the trial court, Appellee's

13  counsel incurred fees and costs of $82,730.41[1]  relating to Debtor's failing to advise

14  the Trustee as to the true title owner of the Property at the commencement of the case

15  up to and including the time the Trustee moved to sell the Property and the Debtor's

16  failure to cooperate with the Trustee in connection with the Trustee's administration

17  of the Property, including, but not limited to, failing to provide the Trustee with access

18  to the Property and requiring the Trustee to take those actions necessary to evict the

19  Debtor from the Property.  While the Court did not necessary agree that the surcharge

20  should be in such amount as requested, the Court, taking all the factors into

21  consideration, ultimately decided that surcharging Debtor's homestead exemption

22  based on her conduct was appropriate and accordingly surcharged the Debtor's

23  homestead exemption in the amount of $18,956.12.   The Appellee contends that the

24  Bankruptcy Court did not abuse its discretion in rendering such decision and

25  respectfully requests that the Court affirm the Order.

26

27

28  [1] The motion sought a total surcharge of $84,518.03, which included certain costs
incurred directly by the Chapter 7 Trustee with the balance being attorneys' fees and
costs of $82,730.41.

2

**APPELLEE'S OPENING BRIEF**

86768.1  838.00003

## II.   ISSUE PRESENTED

Whether the Bankruptcy Court erred in entering the October 22, 2007 *Order Granting, In Part, Carolyn A. Dye, Chapter 7 Trustee's Motion For Order Authorizing Surcharge Of Debtor's Homestead Exemption Filed At Suggestion Of Bankruptcy Appellate Panel?*

## III.   STANDARD OF REVIEW

Review of a bankruptcy court's surcharge of a debtor's exemptions is based on an abuse of discretion.  *Latman v. Burdette*, 366 F.3d 774 (9th Cir. 2004).  A bankruptcy court abuses its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence.  *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999).  Findings of fact upon which a surcharge is based are reviewed for clear error, while the bankruptcy court's conclusions of law are reviewed de novo.  *Kelley v. Locke (In re Kelley)*, 300 B.R. 11, 16 (9th Cir. BAP 2003); *see also Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1156 (9th Cir. 2006).

## IV.   STATEMENT OF FACTS

On October 25, 2001, Dawn Jean Kyle formerly known as Dawn Jean Martin (the "Debtor") filed her petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition Date").  Thereafter, Carolyn A. Dye being duly qualified, was appointed as Chapter 7 Trustee for this estate (the "Appellee" or "Trustee").

According to Debtor's Schedule A and various amended Schedule A's filed subsequent to the Petition Date, the Debtor testified she owned the real property located at 2053 West 29th Street, Los Angeles, California 90018 (the "Property")[2] .

---

[2] In connection with Debtor's voluntary petition, the Debtor also filed her Statement of Financial Affairs.  At No. 10 of the Statement of Financial Affairs, the Debtor does not disclose any transfer of the Property.  See, **Exhibit "B"** contained within **Excerpts of Record, Tab 2.**

3

**APPELLEE'S OPENING BRIEF**

1    See, **Exhibit "A"** contained within **Excerpts of Record, Tab 2**.

2    In Debtor's Schedule C, she claimed an exemption in the amount of
3    $125,000.00 in her real property located at 2053 West 29th Stree t, Los Angeles,
4    California 90018 (the "Property") asserting that Debtor was disabled (the
5    "Exemption").

6    On November 28, 2001, the Trustee conducted the 11 U.S.C. §341(a) Meeting
7    of Creditors of the Debtor ("Meeting of Creditors")[3].

8    On January 2, 2002, the Trustee filed an Objection to Debtor's Exemption (the
9    "Original Objection"). The hearing on the Original Objection was continued several
10   times to conduct discovery, including, the deposition of the Debtor's doctor. The
11   hearing ultimately took place on June 19, 2002.

12   In Debtor's final response prior to the June 19, 2002 hearing for the first time
13   the Debtor disclosed that she was married on September 27, 2001, that her husband
14   was over 65 years of age and on that basis she was also entitled to the Exemption.

15   The Debtor never filed an amended Schedule I testifying that she was married
16   as of the Petition Date, nor did she file an amended Schedule C asserting that her
17   husband was over 65 years of age and resided at the Property on the Petition Date.

18   At the conclusion of the hearing on the Trustee's Original Objection, on
19   June 24, 2002, the Court entered an Order Sustaining the Trustee's Objection to the
20   Exemption (the "Order").

21   On or about June 28, 2002, the Debtor filed a Notice of Appeal of the Order
22   (the "Appeal").

23   On or about July 1, 2002, the Debtor caused to file an amended Schedule C
24   asserting a claim of exemption in the amount of $125,000.00 on the grounds that (1)
25   pursuant to California Code of Civil Procedure § 704.730(a)(3)(A) she is married and
26   her husband is over 65 years of age, and (2) Debtor is disabled ("Amended

27

28   ───────────────────
[3] See, **Exhibit "C"** contained within **Excerpts of Record, Tab 2 for** a true and
correct copy of transcript from Debtor's 11 U.S.C. §341(a) Meeting of Creditors.

4

86768.1  838.00003

1  Exemption"). See, **Exhibit "D"** contained within **Excerpts of Record, Tab 2**.

2      On or about July 1, 2002, the Debtor amended her Schedule I to reflect that she

3  is married.

4      On November 14, 2002, the Bankruptcy Appellate Panel for the Ninth Circuit

5  (the "BAP") affirmed the Order arising under appeal bearing case number BAP CC

6  02-1345. See, **Exhibit "E"** contained within **Excerpts of Record, Tab 2**.

7      On or about December 5, 2002, the Trustee filed her motion objecting to

8  Debtor's Amended Exemption on the grounds that (1) the Amended Exemption was

9  filed in bad faith, (2) Debtor's spouse does not reside at the Property, and (3) the BAP

10 affirmed this Court's ruling that the Debtor is not disabled.

11     On or about May 6, 2003, the Court entered an Order denying the Trustee's

12 objection to the Amended Exemption thereby allowing Debtor an exemption in the

13 Property in the amount of $125,000.00 (the "May 6, 2003 Order"). See, **Exhibit "F"**

14 contained within **Excerpts of Record, Tab 2**.

15     In or about August 2003, the Debtor filed her Motion to Compel the Chapter 7

16 Trustee to Abandon the Property ("Abandonment Motion"). Debtor's Abandonment

17 Motion states that Debtor is the owner of the Property. See, **Exhibit "G"** contained

18 within **Excerpts of Record, Tab 2**. See Exhibit "G", page 4, lines 8 through 12.

19     Subsequent to the May 6, 2003 Order and prior to receipt of the Abandonment

20 Motion, the Trustee attempted to determine the fair market value of the Property for

21 purposes of formulating whether there was sufficient equity in the Property for the

22 Trustee to market and sell the Property[4].

23

24 [4] When the Debtor filed her voluntary petition, Debtor stated that there was no secured
   debt against the Property. Therefore, until the Trustee was able to determine whether

25 Debtor was entitled to an exemption, the Trustee was not in a position to market and
   sell the Property, and, accordingly, had no reason to review title. When the

26 Bankruptcy Court issued the May 6, 2003 Order, the Trustee was then required to
   determine whether there was equity in the Property above costs of sale and Debtor's

27 allowed exemption. Upon the allowance of the exemption per the May 6, 2003 Order,
   the Debtor filed the Abandonment Motion. In opposition to the Abandonment

28 Motion, the Trustee asserted that there was equity above costs of sale and the
   homestead exemption.

5

86768.1  838.00003

1    The Trustee filed an opposition to the Abandonment Motion asserting that the
2    Property had equity above costs of sale and Debtor's homestead exemption.

3    On September 30, 2003, the Court conducted a hearing on Debtor's
4    Abandonment Motion.   The Court orally granted Debtor's Abandonment Motion
5    subject to allowing the Trustee through and including October 30, 2003 to sell the
6    Property for the benefit of Debtor's bankruptcy estate.

7    Subsequent to the hearing on the Abandonment Motion, the Trustee obtained a
8    chain of title report (the "Report") from United Title Company to verify the Debtor's
9    interest in the Property[5].

10   The Report, which is solely comprised of copies of all recorded documents
11   against the Property in the chain of title with the Los Angeles County Recorder,
12   revealed the following items:

13       a.    April 14, 1967[6], Joint Tenancy Grant Deed from Florence Reid to Claude
14               Reid and Florence Reid, husband and wife as joint tenants, bearing
15               recordation number 2363.

16       b.    November 29, 1972, Affidavit – Death of Joint Tenant providing that
17               Claude Reid passed away on November 13, 1972, bearing recordation
18               number 2133.

19       c.    August 24, 1978, Quitclaim Deed from Eugene H. Jackson to Florence
20               Reid, bearing recordation number 78-940405.

21       d.    July 23, 1981, Joint Tenancy Grant Deed from Florence Reid to Marie F.
22               Holt and Florence Reid as joint tenants, bearing recordation number 81-
23               736007.

---

25   [5] Again, the Trustee was not in a position to market and sell the Property until such
26   time as there was a determination of Debtor's exemption. Once the Court granted the
     Abandonment Motion but allowed the Trustee an opportunity to market the Property,
27   the Trustee obtained the Report which, for the first time, disclosed the Debtor's
     fraudulent transfer to the Cinderella Living Trust.

28   [6] The dates herein are the recording dates when the documents were recorded with the
     Los Angeles County Recorder's Office.

**APPELLEE'S OPENING BRIEF**

86768.1   838.00003

e.   December 22, 1989, Quitclaim Deed from Marie F. Holt to Dawn Jean Martin, bearing recordation number 89-2064545.

f.   March 12, 1990, Quitclaim Deed from Nena Martin, conservator for Florence Reid to Dawn Jean Martin, bearing recordation number 90-390963.

g.   April 22, 1992, Notice of Pending Action, Los Angeles Superior Court Case No. BC051142 (Eugene Jackson v. Nena Martin and Dawn Jean Martin), bearing recordation number 92-715858.

h.   December 28, 1992, Notice of Withdrawal of Lis Pendens, Los Angeles Superior Court Case No. BC051142 (Eugene Jackson v. Nena Martin and Dawn Jean Martin), bearing recordation number 92-2429121.

i.   July 3, 2000, Quitclaim Deed from Dawn Jean Martin to the Cinderella Living Trust and Dawn Jean Martin as Trustor of the Cinderella Living Trust, bearing recordation number 00-1020143.

See, **Exhibit "H"** contained within **Excerpts of Record, Tab 2** for a true and correct copy of the Report.

As such, on or about October 3, 2003, the Trustee obtained definitive information for the first time that the Debtor had transferred title to the Property to the Cinderella Living Trust, a revocable trust (the "Trust")[7].

On or about October 7, 2003, the Trustee filed an Adversary Proceeding against the Trust seeking to set aside the transfer of the Property to the Trust as a fraudulent conveyance.  Thereafter, the trustee of the Trust entered into a settlement agreement with the Trustee thereby transferring the Property to the Trustee for the benefit of Debtor's estate.  On December 23, 2003, the Bankruptcy Court entered an order authorizing a compromise between the Trustee and the trustee of the Trust (the

---

[7] Again, Debtor never testified at her Meeting of Creditors regarding the transfer of the Property to the Trust nor did Debtor ever disclose this fact during the administration of her bankruptcy case until this point in the case.

7

**APPELLEE'S OPENING BRIEF**

86768.1  838.00003

1    "December 23, 2003 Order").    See, **Exhibit "I"** contained within **Excerpts of**
2    **Record, Tab 2**.

3        Thereafter, unable to gain access to show the Property to prospective bidders,
4    the Trustee caused to file an emergency application for an Order, pursuant to 11
5    U.S.C. §§521(3) & (4), Requiring the Debtor To Provide the Chapter 7 Trustee With
6    Unfettered Access To the Property and for an Extension Of Time To Compel the
7    Chapter 7 Trustee To Abandon Debtor's Property (the "Emergency Motion").

8        The Court scheduled a hearing on the Emergency Motion for October 16, 2003.
9    At the hearing on the Emergency Motion, for the first time, the Debtor took the
10   position and testified that she does not own the Property.  As a result of Debtor's
11   contrary position, the Court, on October 21, 2003, entered an Order providing the
12   Trustee with access to the Property on 24 hours notice and vacated it ruling on the
13   Abandonment Motion and subsequently denied Debtor's Abandonment Motion on the
14   grounds that Debtor now claimed she did not own the Property (the October 21, 2003
15   Order").  See, **Exhibit "J"** contained within **Excerpts of Record, Tab 2**.

16       Thereafter, on October 31, 2003, the Trustee filed her Notice of Motion and
17   Motion for Reconsideration of Order Denying Chapter 7 Trustee's Objection to
18   Debtor's Amended Claim of Homestead Exemption in her Residence (the
19   "Reconsideration Motion").  See, **Exhibit "K"** contained within **Excerpts of Record,**
20   **Tab 2**.  The basis of the Reconsideration Motion was that title to the Property was
21   held by the Trust on the date of Debtor's voluntary petition, thus, Debtor did not have
22   an ownership interest in the Property within which to exempt.  Additionally, the
23   Trustee asserted, pursuant to 11 U.S.C. §522(g), that because the Trustee recovered
24   the Property through settlement with the Trust, Debtor was not entitled the homestead
25   exemption.

26       On November 25, 2003, this Court conducted a hearing on the Trustee's
27   Reconsideration Motion, in addition to a hearing on the Trustee's Motion to Sell the
28   Property ("Motion to Sell").

**APPELLEE'S OPENING BRIEF**
86768.1  838.00003

On December 3, 2003, the Bankruptcy Court entered an order granting the Reconsideration Motion (the "December 3, 2003 Order").   See, **Exhibit "L"** contained within **Excerpts of Record, Tab 2**.   The result being the May 6, 2003 Order denying the Trustee's objection to the Amended Exemption was vacated and an order entered sustaining the Trustee's objection to the Amended Exemption.    In a separate order the Court granted the Motion to Sell.

On or about December 15, 2003, the Debtor filed her appeal of the December 3, 2003 Order to the BAP.

Following oral argument, on August 10, 2004, the BAP filed its memorandum reversing the December 3, 2003 Order (the "Memorandum").   See, **Exhibit "M"** contained within **Excerpts of Record, Tab 2**.

Beginning at page 10, line 10 of the Memorandum, the BAP stated,

> "The facts are sufficiently equivocal that a complete denial of the debtor's claim of exemption is not appropriate (footnote omitted).  It may be, however, that a surcharge of the exemption may be appropriate to reflect the trustee's reasonably necessary (footnote omitted) expenses, if any, in dealing with the problem created by the Cinderella Living Trust, a revocable trust..."

Accordingly, this Motion is filed on the suggestion of the BAP.

On December 8, 2004, the Trustee timely filed her Notice of Appeal of the Memorandum to this Ninth Circuit Court of Appeal.

On March 1, 2006, the Ninth Circuit Court of Appeals affirmed the Memorandum (the "March 1, 2006").   See, **Exhibit "N"** contained within **Excerpts of Record, Tab 2**.

On October 11, 2006, the Court entered an Order granting motion to compel the Trustee to disburse the Amended Exemption and costs taxed by the 9th Circuit Court of Appeals.   See, **Exhibit "O"** contained within **Excerpts of Record, Tab 2**.

On November 3, 2006, the Trustee issued payment, of all remaining Estate

1  funds, to the Debtor on account of the Amended Exemption in the amount of

2  $105,985.62[8] . See, **Exhibit "P"** contained within **Excerpts of Record, Tab 2**.

3      On August 31, 2007, the Trustee caused to be filed her Notice of Motion and

4  Motion for Order Authorizing Surcharge of Debtor's Homestead Exemption Filed At

5  Suggestion of Bankruptcy Appellate Panel (the "Surcharge Motion**")**.  See, **Excerpts**

6  **of Record, Tab 1** (the Notice) **and Tab 2** (the Motion), respectively.

7      On September 10, 2007, the Debtor filed her opposition to the Surcharge

8  Motion (the "Opposition"). See, **Excerpts of Record, Tab 3**.

9      On September 10, 2007, the Debtor filed a motion to continue the hearing on

10  the Surcharge Motion (the "Motion to Continue"). See, **Excerpts of Record, Tab 4**.

11      On September 14, 2007, the Debtor filed a supplement to the Motion to

12  Continue. See, **Excerpts of Record, Tab 5.**

13      On September 18, 2007, the Trustee caused to be filed her Reply (the "Reply")

14  to the Opposition to the Surcharge Motion. See, **Excerpts of Record, Tab 6**.

15      On September 18, 2007, the Trustee caused to be filed her Response to the

16  Motion to Continue.  See, **Excerpts of Record, Tab 7**.

17      On October 19, 2007, the Bankruptcy Court entered an Order Denying the

18  Motion to Continue. See, **Excerpts of Record Tab 8**.

19      On September 25, 2007, the Bankruptcy Court conducted a hearing on the

20  Surcharge Motion.  See, **Excerpts of Record, Tab 9**.

21      On October 22, 2007, the Bankruptcy Court entered an Order Granting, In Part,

22  Carolyn A. Dye, Chapter 7 Trustee's Motion For Order Authorizing Surcharge Of

23  Debtor's Homestead Exemption Filed At Suggestion Of Bankruptcy Appellate Panel

24  _____

25  [8] Subsequent to the December 3, 2003 Order (i.e. the Reconsideration Order), the

26  Bankruptcy Court entered an Order on June 2, 2004 awarding interim compensation
    for fees, expenses and compensation of Trustee's counsel for the period May 1, 2002

27  through April 16, 2004 in the amount of $115,952.25 and expenses in the amount of
    $12,843.71 (the "Fee Order").  The Debtor did not seek a stay of the Fee Order.  At

28  this point, the Trustee has received no compensation in this case and Trustee's counsel
    has incurred an additional, at least, $200,000.00 in defending the Estate against the
    Debtor's actions.

**APPELLEE'S OPENING BRIEF**

1    (the "October 22, 2007 Order").  See, **Excerpts of Record, Tab 10**.

2        On October 30, 2007, the Debtor filed a Notice of Appeal of the October 22,

3    2007 Order.  See, **Excerpts of Record, Tab 11**.

4

5    **V.   SUMMARY OF ARGUMENT**

6        Simply put, the Debtor's calculated and continued interference with the

7    Trustee's administration of the Debtor's bankruptcy case caused the Trustee and her

8    counsel to incur significant and unnecessary attorneys' fees and costs in defending the

9    Estate against such intentional interference by the Debtor.  Because of the Debtor's

10   willful conduct, the Court properly surcharged the Debtor's homestead exemption.

11

12   **VI.  ARGUMENT**

13      **1.  Surcharge Of Debtor's Homestead Exemption Is Appropriate Where**

14             **Debtor's Failure To Cooperate In The Administration Of Debtor's**

15             **Estate Requires The Trustee To Incur Unnecesary Fees And**

16             **Expenses.**

17        The Bankruptcy Code requires debtor's to cooperate with trustees as necessary

18    to enable the trustee to perform his or her duties, and gives trustees cumulative

19    remedies against improper debtor behavior.  See, 11 U.S.C. §521(a)(3) & (4).

20        A surcharge of a debtor's exemption is appropriate to reimburse the estate for a

21    trustee's necessary expenses incurred in connection with administering property of a

22    Bankruptcy Estate, to the extent caused by the debtor's actions.  See, *In re Onubah*,

23    375 B.R. 549 (9th Cir. BAP 2007). When a debtor's contemptuous conduct involves

24    the suppression of estate property, or when a debtor fails to adequately explain its loss,

25    a court may surcharge the debtor's exemptions in an effort to prevent a fraud on the

26    bankruptcy court and to protect creditors by preventing the debtor from sheltering

27    more assets than permitted by the Bankruptcy Code.  See, *Latman v. Burdette*, 366

28    F.3d 774, 784-85 (9th Cir. 2004) and Onubah.  Whether deemed a "surcharge" or a

**APPELLEE'S OPENING BRIEF**
86768.1  838.00003

1    "setoff" the purpose is not to "punish" the debtor, but to reach an equitable result by
2    preserving the spirit of the Bankruptcy Code and the creditors' reasonable expectations
3    in the event of liquidation.  Moreover, the Ninth Circuit's Bankruptcy Appellate Panel
4    has approved of conditioning allowance of an amended schedule of exemptions on the
5    payment of fees and costs due to a bankruptcy trustee where allowing the exemptions
6    as amended absent that condition would prejudice the trustees.  See *In re Arnold*, 252
7    B.R. 778, 788-89 (9th Cir. B.A.P. 2000) and Onubah.

8         The rationale behind the allowance of a surcharge against a debtor's exemption
9    is that had the trustee not incurred the additional expenses, those otherwise available
10   funds would inure to the benefit of the debtor's creditors.  Thus, Courts have
11   authorized a surcharge of a debtor's exemption so as to not prejudice the creditors of
12   the estate for a debtor's improper behavior.

13        The sole asset of this Bankruptcy Estate was the Property.

14        At the commencement of Debtor's case, the Debtor claimed an exemption in
15   the Property on the basis that she was disabled.  The Trustee objected and based on
16   the Debtor's own doctor's testimony, among other things, this Court sustained the
17   Trustee's objection.  The Debtor appealed to the BAP and the Order was affirmed on
18   appeal.

19        The Debtor then amended her Exemption on the basis that as of the Petition
20   Date she was married to a person over the age of sixty-five (65), among other things.
21   The Trustee again objected, however, the Court overruled that objection.

22        The Debtor then sought abandonment of the Property.  The Court granted the
23   Abandonment Motion conditioned on the Trustee having thirty (30) days to market
24   and sell the Property.  Immediately, the Debtor failed to cooperate with the Trustee or
25   her agents by refusing the allow access to the Property to show prospective buyers.
26   The Trustee the filed the Emergency Motion at which time the Debtor claimed she
27   was not the owner of the Property.  It then was disclosed that the Debtor transferred
28   the Property to the Trust.

**APPELLEE'S OPENING BRIEF**

1    While wading through all of the facts and the Debtor's inconsistent positions
2    taken in connection with the Trustee's administration of her bankruptcy case, the
3    overwhelming facts conclude that (1) as of the Petition Date, Debtor did not hold title
4    to the Property, (2) as of the Petition Date, title to the Property was held by the Trust,
5    (3) at no time during the administration, including the Meeting of Creditors, did the
6    Debtor state that the Debtor transferred the Property to the Trust, and (4) the Trustee,
7    by way of settlement of an adversary proceeding, recovered the Property from the
8    Trust for the benefit of Debtor's creditors.

9    Because the Debtor failed to disclose these facts and failed to cooperate with
10   the Trustee in connection with the liquidation of the Property, the Trustee and her
11   counsel were required to incur necessary expenses to obtain title to the Property in
12   order for the Trustee to liquidate the Property for the benefit of Debtor's Bankruptcy
13   Estate.

14   At no point did the Debtor state she did not own the Property or that she had
15   transferred it to the Trust.   In fact, Debtor's Schedule A and various amended
16   Schedule A's testify, under penalty of perjury, that the Debtor claims an ownership
17   interest in the Property.  In connection with Debtor's Abandonment Motion, Debtor
18   states she is the owner of the Property.   However, at the hearing on Trustee's
19   Emergency Motion, Debtor claimed she did not own the Property despite the fact that
20   in Debtor's Abandonment Motion she testified she is the owner of the Property.

21   Further, the Debtor did not disclose the transfer of the Property to the Trust at
22   her Meeting of Creditors and continued to maintain an interest in the Property until
23   such time as the Bankruptcy Court allowed the abandonment of the Property
24   conditioned upon allowing the Trustee thirty (30) days to sell the Property.  At that
25   time the Trustee obtained the Report and discovered that the Debtor had transferred
26   the Property to the Trust.

27   Upon learning that the Trust was revocable, because of the Debtor's actions, the
28   Trustee could not simply have revoked the Trust.  Revoking the Trust does not re-vest

1   title to the Property in the original transferor.   Because of Debtor's actions and

2   behavior, the Trustee necessarily had to commence an adversary proceeding against

3   the Trust. The trustee of the Trust, wanting to avoid litigation, settled with the Trustee

4   and re-conveyed the Property to the Trustee.   See, **Exhibit "I"** contained within

5   **Excerpts of Record, Tab 2**. In connection with the settlement, the Trustee received

6   and recorded, on November 4, 2003, a Quitclaim Deed from the trustee of the Trust to

7   the Trustee, thereby placing title to the Property in the name of the Trustee (the

8   "November 4, 2003 Quitclaim Deed").  See, **Exhibit "S"** contained within **Excerpts**

9   **of Record, Tab 2**.  As evidence of Debtor's deliberate attempts to stop the Trustee

10  from liquidating the Property and the basis for requiring the Trustee to commence and

11  continue the adversary proceeding against the trustee of the Trust, on November 7,

12  2003, the Debtor, acting as trustor of the Trust, recorded a "Revocation of Deed" in an

13  effort to avoid the Trustee coming into possession of the Property (the "Debtor's

14  Revocation of Deed").   See, **Exhibit "T"** contained within **Excerpts of Record,**

15  **Tab 2**.

16      To further establish Debtor's unclean hands, Trustee's counsel received a

17  telephone call from the trustee of the Trust claiming that the Debtor and her husband

18  would physically harm the trustee of the Trust in the event he did not revoke the

19  Quitclaim Deed.   On November 11, 2003, Trustee's counsel documented the

20  telephone call with a letter to the trustee of the Trust.  See, **Exhibit "U"** contained

21  within **Excerpts of Record, Tab 2**.

22      As such, the Trustee's litigation of the Exemption and Amended Exemption, the

23  defense of the Abandonment Motion, prosecution of the Emergency Motion, the

24  commencement of the adversary proceeding against the Trust and its trustee and

25  obtaining possession of the Property with the assistance of the U.S. Marshal were all

26  necessary action the Trustee and her counsel were required to take to bring about

27  liquidation of the Property. Because of Debtor's failure to cooperate and intentional

28  interference, related solely to these issues, required surcharging Trustee and Trustee's

14

1  counsel's fees and costs against Debtor's homestead exemption in accordance with
2  *Onubah, Latman* and *Arnold*.

3      Specifically, the Trustee and her counsel were required to incur these
4  unnecessary services, justifying the surcharge, and are broken down into the following
5  categories:

6      **1.    Defending the Abandonment Motion**

7      Within this category, the Estate incurred fees and costs as they pertain to Debtor
8  seeking abandonment of the Property.  The Estate reviewed the Abandonment Motion,
9  opposed the Abandonment Motion and attended the hearing on the Abandonment
10  Motion, among other things.

11      **2.    Prosecuting Unfettered Access to Property**

12      Within this category, the Estate incurred fees and costs as they pertain to the
13  prosecution of the Emergency Motion.   Once the Court granted the Abandonment
14  Motion thereby providing the Trustee thirty (30) days to market and sell the Property,
15  the Debtor refused to allow any prospective buyers to have access to the Property.  As
16  such, the Trustee brought the Emergency Motion to gain access to the Property to
17  show prospective buyers.   The Estate incurred attorneys' fees for commencing the
18  Emergency Motion, responding to Debtor's opposition, appearing at the hearing on
19  the Emergency Motion, among other things.

20      **3.    Obtaining Possession of Property with U.S. Marshal**

21      Within this category, the Estate incurred fees and costs as they pertain to
22  obtaining possession of the Property with the assistance of the United States Marshal.
23  Once the Court granted the Emergency Motion, the Trustee immediately obtained a
24  buyer to purchase the Property.  Following entry of the Order on the Motion to Sell,
25  the Debtor refused to vacate the Property.  The Trustee filed the appropriate motion to
26  obtain a Writ of Possession, which was granted by this Court.  Thereafter, the Trustee
27  obtained the assistance of the United States Marshal to evict the Debtor pursuant to
28  the Writ of Possession.   The Estate incurred attorneys' fees for opposing Debtor's

**APPELLEE'S OPENING BRIEF**

1    motion for an extension of time to vacate the Property, obtaining the Writ of

2    Possession and making the appropriate arrangements with the United States Marshal

3    to evict the Debtor, among other things.

4         **4.    Objection to the Original Claim of Exemption**

5              Within this category, the Estate incurred fees and costs as they pertain to the

6    Original Objection to the Exemption.   As provided in detail above, the Debtor's

7    Exemption was solely on the basis that she was disabled.   The Trustee filed her

8    Original Exemption, obtained discovery, including Debtor's doctor who testified that

9    she was not disabled to gain employment as a writer and ultimately obtained the Order

10   sustaining the Original Objection.   Thereafter, the Debtor appealed the Order to the

11   BAP, who affirmed this Court's Order.   The Estate incurred attorneys' fees for

12   prosecuting the Original Objection, obtaining the Order and defending the Order on

13   appeal, among other things.

14             Had the Debtor claimed the Exemption consistent with the Amended

15   Exemption and not fully prosecuted the Exemption and then appealed the Order, the

16   Estate would not have incurred fees relative to Order obtained on the Original

17   Objection to the Exemption.

18        **5.    Objection to the Amended Claim of Exemption**

19             Within this category, the Estate incurred fees and costs as they pertain to the

20   objection to the Amended Exemption.   On or about December 5, 2002, the Trustee

21   filed her motion objecting to Debtor's Amended Exemption on the grounds that (1)

22   the Amended Exemption was filed in bad faith, (2) Debtor's spouse does not reside at

23   the Property, and (3) the BAP affirmed this Court's ruling that the Debtor is not

24   disabled.   Thereafter, the Court issued the May 6, 2003 Order.   Thereafter, on

25   October 31, 2003, the Trustee filed the Reconsideration Motion.   The basis of the

26   Reconsideration Motion was that title to the Property was held by the Trust on the

27   date of Debtor's voluntary petition, thus, Debtor did not have an ownership interest in

28   the Property within which to exempt.  Additionally, the Trustee asserted, pursuant to

**APPELLEE'S OPENING BRIEF**

1    11 U.S.C. §522(g), that because the Trustee recovered the Property through settlement

2    with the Trust, Debtor was not entitled the homestead exemption.  On November 25,

3    2003, this Court conducted a hearing on the Trustee's Reconsideration Motion.  On

4    December 3, 2003, the Bankruptcy Court entered the December 3, 2003 Order.  The

5    result being the May 6, 2003 Order denying the Trustee's objection to the Amended

6    Exemption was vacated and an order entered sustaining the Trustee's objection to the

7    Amended Exemption.  On or about December 15, 2003, the Debtor filed her appeal of

8    the December 3, 2003 Order to the BAP.    Following oral argument, on August 10,

9    2004, the BAP filed the Memorandum).  On December 8, 2004, the Trustee timely

10   filed her Notice of Appeal of the Memorandum to this Ninth Circuit Court of Appeal.

11   On March 1, 2006, the Ninth Circuit Court of Appeals affirmed the Memorandum.

12   **6.    Sale of the Property**

13   Within this category, the Estate incurred fees and costs as they pertain to selling

14   the Property.   Once the Abandonment Motion was granted, the Trustee immediately

15   proceeded with employing a real estate broker, marketing the Property, obtaining an

16   offer to purchase and filing a the Motion to Sell.    The Trustee, over opposition,

17   obtained an Order granting the Motion to Sell.   The Order granting the Motion to Sell

18   was appealed to the BAP, where the appeal was dismissed.  The appeal was dismissed

19   as moot because no stay pending appeal had been obtained and the sale transaction

20   closed shortly after appeal was taken.

21   **7.    Property Issues Related to Cinderella Trust**

22   Within this category, the Estate incurred fees and costs as they pertain to the

23   Trustee obtaining information about the Trust, obtaining a settlement with the trustee

24   of the Trust to re-convey title to the Property to the Trustee and defending the several

25   appeals relative to the December 23, 2003 Order.  On November 5, 2003, the Trustee

26   caused to file her Chapter 7 Trustee's Notice Of Motion and Motion For Order

27   Authorizing Chapter 7 Trustee To Compromise Controversy With Cinderella Living

28   Trust And Ernest Miles, Trustee Of The Cinderella Living Trust (the "Compromise

1  Motion"). On November 12, 2003, the "Debtor filed, in pro per, her opposition to the

2  Compromise Motion (the "Debtor's Opposition"). On November 19, 2003, the

3  Debtor filed an Errata to the Debtor's Opposition (the "Errata"). On December 9,

4  2003, the Trustee caused to file her Reply to Debtor's Opposition and the Errata (the

5  "December 9 Reply"). On December 16, 2003, this Court conducted a hearing on the

6  Compromise Motion, Debtor's Opposition, the Errata and the December 9 Reply.

7  Despite having filed Debtor's Opposition and the Errata, Debtor did not appear at the

8  December 16, 2003 hearing. On December 23, 2003, the United States Bankruptcy

9  Court entered the December 23, 2003 Order. On December 31, 2003, Irving, by and

10  through his counsel, David Kyle ("Kyle")[9] filed his Notice of Appeal of the Order (the

11  "Notice of Appeal") to the BAP. On February 6, 2004, the Trustee caused to file her

12  Motion to (1) Dismiss Appeal on Grounds that Appellant (i.e. Irving) Lacks Standing

13  to Appeal, and (2) Impose Sanctions Against Appellant (i.e. Irving) and His Counsel,

14  David Kyle, for Filing Frivolous Appeal (the "Motion to Dismiss"). On March 2,

15  2004, the BAP issued an Order Dismissing Appeal. On or about March 9, 2004,

16  Irving filed a Motion for Reconsideration of the BAP Order Dismissing Appeal. On

17  March 24, 2004, the BAP entered an Order Denying Irving's Motion for

18  Reconsideration. On or about March 29, 2004, Irving, through his counsel Kyle, filed

19  a Motion for Leave to Amend Appeal for the purposes of naming Kyle's wife, the

20  Debtor, as the appellant for the purposes of this appeal. On April 6, 2004, the BAP

21  issued an Order Denying Irving's Motion to Amend Appeal. Subsequent to the BAP

22  Order Denying Irving's Motion to Amend Appeal, on April 6, 2004, Irving filed a

23  Motion for Reconsideration of the Order Denying Irving's Motion to Amend Appeal.

24      Also on April 6, 2004, the Debtor filed a Motion for Leave to Amend Appeal as

25  well as Debtor's Motion for Reconsideration of Order Dismissing Appeal. On April

26  21, 2004, the BAP issued an Order (1) Denying Irving's Motion for Reconsideration

27

28

---

[9] David Kyle is Debtor Dawn Jean Kyle's husband.

18

**APPELLEE'S OPENING BRIEF**

1  of April 6, 2004 BAP Order; (2) Denying Debtor's Motion to Amend the Notice of

2  Appeal; and (3) Denying Debtor's Motion for Reconsideration of Order Dismissing

3  Appeal (the "April 21, 2004 BAP Order").   On April 26, 2004, Irving filed another

4  Motion for Leave to Amend Appeal for the purposes of naming Debtor as trustor of

5  the Cinderella Living Trust and Ernest Miles as trustee of the Cinderella Living Trust

6  as appellants.   On May 4, 2004, the BAP issued another Order Denying Motion for

7  Leave to Amend Appeal and Denying Appellee's Request for Sanctions (the "May 4,

8  2004 BAP Order").   On May 24, 2004, Irving, through his counsel Kyle (also

9  appearing to represent the Debtor in various capacities and the trustee of the

10 Cinderella Living Trust, among others), filed a Notice of Appeal of the May 4, 2004

11 BAP Order to the United States Court of Appeals for the 9th Circuit (the "Notice of

12 Appeal of the May 4, 2004 BAP Order").   Thereafter, the Ninth Circuit affirmed the

13 May 4, 2004 BAP Order.  Clearly, due to the multiplied proceedings, the BAP, in the

14 Memorandum, stated, "that a surcharge of the exemption may be appropriate to reflect

15 the trustee's reasonably necessary (footnote omitted) expenses, if any, in dealing with

16 the problem created by the Cinderella Living Trust…"

17 **8.    Fees and Costs Incurred by the Trustee**

18 In addition, the Trustee advanced the cost, in the amount of $187.20, to the

19 United States Marshal, in order to secure Debtor's eviction from the Property.   The

20 Trustee also advanced the cost in the amount of $1,582.16 for insurance on the

21 Property and $18.26 to remove trash from the Property following Debtor's eviction.

22 See, **Exhibit "R"** contained within **Excerpts of Record, Tab 2**.

23 **2.    The Bankruptcy Court's Analysis Was Not An Abuse of Discretion**

24 **Nor Did It Commit Clear Error In Reviewing the Facts of the Case**

25 At **Excerpts of Record, Tab 9**, pages 11 and 12, the Bankruptcy Court

26 specifically detailed the Debtor's willful behavior justifying the surcharge.   Those

27 detailed actions of the Debtor are as stated in the Surcharge Motion and hereinabove.

28 In fact, at Excerpts of Record, Tab 9, page 5, lines 16-17, the Bankruptcy Court

19

1  acknowledged that the facts underlying the Surcharge Motion are not in reasonable
2  dispute.

3      Moreover, the Bankruptcy Court's findings of fact and conclusions of law were
4  stated on the record, in detail, for over 10 pages, and clearly demonstrate the
5  Bankruptcy Court's detailed analysis of the Surcharge Motion, the Opposition and the
6  Reply, in addition to the Court's familiarity with the case and its review of the
7  relevant facts before determining the Surcharge Motion.

8      It is clear that the Bankruptcy Court did not abuse its discretion nor did it
9  commit error in reviewing the facts of this case.

10

11 **VII.   <u>CONCLUSION</u>**

12     Based on the foregoing, Appellee respectfully requests that this Court affirm the
13 October 22, 2007 Order.

14

15 DATED:  June 20, 2008          MOLDO DAVIDSON FRAIOLI
                                 SEROR& SESTANOVICH LLP
16

17

18                             By: /s/ANTHONY A. FRIEDMAN

19                                 ANTHONY A. FRIEDMAN
                                 Attorneys for Appellee
20                                 Carolyn A. Dye, Chapter 7 Trustee

21

22

23

24

25

26

27

28

**APPELLEE'S OPENING BRIEF**

86768.1  838.00003

1

2

## COMPLIANCE WITH CIRCUIT RULE 28-2.9

3

4

5       The undersigned certifies that the following information is the name, address

6   and court of the bankruptcy judge initially ruling on the matter.

7                          The Honorable Vincent P. Zurzolo
              United States Bankruptcy Court, Central District of California,
8                              Los Angeles Division
                               255 E. Temple Street
9                         Los Angeles, California 90012

10

11   DATED:  June 20, 2008              MOLDO DAVIDSON FRAIOLI
12                                      SEROR& SESTANOVICH LLP

13

14                                      By: /s/ANTHONY A. FRIEDMAN

15                                         ANTHONY A. FRIEDMAN
                                         Attorneys for Appellee,
16                                       Carolyn A. Dye, Chapter 7 Trustee

17

18

19

20

21

22

23

24

25

26

27

28

86768.1  838.00003

## CERTIFICATION OF COMPLIANCE WITH FED.R. APP.R. 32(a)(7)(c) AND NINTH CIRCUIT RULE 32-1

Pursuant to Fed. R. App. P. 32(a)(7)(c) and Ninth Circuit Rule 32-1, the attached Appellant's Opening Brief is proportionately spaced, 14 point, "Times New Roman" font. The word processing program on which this document, Appellee's Opening Brief, was prepared counts 6,134 words in the entire document.

The attached brief is not subject to the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief complies with Fed. R. App. P 32(a)(1-7) and is a principal brief of no more than 30 pages.

Executed under penalty of perjury under the laws of the United States of America.

DATED: June 20, 2008     MOLDO DAVIDSON FRAIOLI
                             SEROR& SESTANOVICH LLP


By: /s/ANTHONY A. FRIEDMAN

ANTHONY A. FRIEDMAN
Attorneys for Appellee
Carolyn A. Dye, Chapter 7 Trustee

22

86768.1  838.00003

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

    I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and am not a party to the within action.  I am employed by the law firm of Moldo Davidson Fraioli Seror & Sestanovich LLP, located at 2029 Century Park East, 21st Floor, Los Angeles, California 90067, Telephone: (310) 551-3100, Facsimile: (310) 551-0238.

    On **June 20, 2008**, I served the document(s) described as:  **APPELLEE'S OPENING BRIEF**, on the interested parties in said action by enclosing the document(s) in a sealed envelope addressed as follows:

Dawn Jean Kyle
fka Dawn Jean Martin
2892 N. Bellflower
Suite 354
Long Beach, CA  90815

☒  **BY MAIL:**  I caused such envelope(s) with postage thereon, fully prepaid, to be placed in the United States mail. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

☐  **BY FEDERAL EXPRESS/OVERNITE EXPRESS/EXPRESS MAIL/CERTIFIED MAIL:**  I caused said document(s) to be sent via Federal Express/Overnite Express/Express Mail for next business day delivery or Certified Mail.

☐  **BY EMAIL:**  I caused said document(s) to be sent via email.

☐  **BY TELEPHONIC COMMUNICATION:**  I telephoned the interested parties and gave notice as indicated in my declaration.

☐  **BY FACSIMILE:**  I caused said document(s) to be sent via facsimile.

☐  **[State]**    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒  **[Federal]**    I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

    Executed on **June 20, 2008**, at Los Angeles, California.

TRISH MELENDEZ

31930.1  838.00003